UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALAN PHILIPP, *et al.*,

      Plaintiffs,

  v.

FEDERAL REPUBLIC OF GERMANY
AND STIFTUNG PREUSSISCHER
KULTURBESITZ,

      Defendants.

Civil Action No. 15-00266 (CKK)

**MEMORANDUM OPINION**
(January 29, 2020)

Pending before this Court is Defendants' [43] Motion to Stay Pending Petition for Writ of Certiorari to the United States Supreme Court ("Defs' Mot.").[1] Defendants Federal Republic of Germany and Stiftung Preussischer Kulturbesitz request that this Court stay this case pending resolution of their Petition for a Writ of Certiorari, which was filed in the United States Supreme Court on September 16, 2019.[2] *See* Notice of Filing, ECF No. 46.

I. Background

Plaintiffs, who are the legal successors of the estates of three art dealer firms in Frankfurt, Germany (the "Consortium"), filed suit against Defendants the Federal Republic of Germany ("Germany") and Stiftung Preussischer Kulturbesitz ("SPK"), an instrumentality of Germany,

---

[1] The Motion is captioned with the name of both original defendants and will be addressed as such, although the Federal Republic of Germany has been dismissed from this civil action in accordance with the Mandate of the Court of Appeals for the D.C. Circuit. *See* 7/30/2019 Order, ECF No. 40. Defendants requested oral argument on their Motion, but in an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] The Petition for a Writ of Certiorari was filed by both Defendants.

1

alleging that the SPK is in wrongful possession of a collection of medieval relics, known as the "Welfenschatz," because the 1935 sale by the Consortium was coerced as part of the Nazi persecution of the Jewish sellers. Defendants moved to dismiss each of Plaintiffs' ten claims.

On March 31, 2017, the Court entered an [25] Order granting in part and denying in part Defendants' Motion to Dismiss the First Amended Complaint. *See Philipp v. Fed. Rep of Germany*, 248 F. Supp. 3d 59 (D.D.C. 2017). Specifically, the Court dismissed five of Plaintiffs' ten claims, but denied Defendants' request to dismiss the following five claims: declaratory relief (Count I); replevin (Count II); conversion (Count III); unjust enrichment (Count IV); and bailment (Count IX). In reaching this holding, the Court found that: (1) Plaintiffs sufficiently pled these five claims under the expropriation exception to the Foreign Sovereign Immunities Act ("FSIA"), codified at 28 U.S.C. § 1605(a)(3) ("FSIA claims"); (2) Plaintiffs' claims are not preempted or non-justiciable, nor should they be dismissed under the doctrine of forum non conveniens ("non-FSIA claims"). Defendants filed an interlocutory appeal as of right before the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") with respect to the FSIA issue. *See, e.g., Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004) ("The denial of a motion to dismiss on the ground of sovereign immunity . . . is . . . subject to interlocutory review.").

On July 10, 2018, the D.C. Circuit issued its Opinion in *Philipp v. Federal Republic of Germany*, 894 F.3d 406 (D.C. Cir. 2018). The Circuit panel relied upon the reasoning in *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2018), recognizing that "a foreign sovereign's taking of its own citizens' property. . . does not violate the international law of takings" and ordinarily is not subject to the FSIA's expropriation exception. *Philipp*, 894 F.3d at 410 (citing *Simon*, 894 F.3d at 144). But the *Simon* court held ultimately that a foreign state could face suit

2

in the United States where the alleged taking "amounted to the commission of genocide." *Philipp*, 894 F.3d at 410-11 (citing *Simon*, 812 F.3d at 142). In *Philipp*, the panel held further that the FSIA bars any consideration of international comity, even when a plaintiff could have pursued his claims in the foreign state's courts. *Philipp*, 894 F. 3d at 410. The panel rejected the position to the contrary that was advanced by the United States and acknowledged that it was split with the Seventh Circuit's recent decision on the same issue. *Id.* at 416.

Defendants petitioned the Circuit Court for a rehearing *en banc*, and the United States filed an amicus brief in support of a rehearing, asserting that courts can and should consider international comity. The petition for rehearing was denied as was the Defendants' request that the D.C. Circuit stay the mandate. Defendants then asked the Supreme Court to stay proceedings, but that application was denied "without prejudice to petitioners filing a new application after seeking relief in the district court." Def.'s Mot., ECF No. 43, at 9.[3]

The July 16, 2019 [39] Mandate from the D.C. Circuit references the July 10, 2018 Judgment affirming "the denial of the motion to dismiss," with instructions that, on remand, "the district court must grant the motion to dismiss with respect to the Federal Republic of Germany . . ." *See* Judgment, ECF No. 39-1. On July 30, 2019, this Court issued an Order dismissing with prejudice Defendant Federal Republic of Germany. *See* ECF No. 40.

On August 28, 2019, the Court held a Status Conference in this case, where the Defendants' pending Motion to Stay was discussed. This Court indicated that Defendants were permitted to file a reply in support of their Motion to Stay, subsequent to the Status Conference, and further, that the Court would consider the pleadings and issue an order. Now pending before this Court

---

[3] The page numbers cited herein are the numbers assigned pursuant to the Electronic Case Filing system.

are Defendants' [43] Motion to Stay Pending Petition for Writ of Certiorari to the United States Supreme Court ("Defs' Mot."); Plaintiffs' [44] Opposition to the Motion to Stay (Pls.' Opp'n.); and Defendants' [45] Reply in Support of Motion to Stay ("Defs.' Reply").

Upon consideration of the Defendants' [43] Motion to Stay and Plaintiffs' Opposition thereto, for the reasons explained herein, the Court shall STAY this civil action pending a determination on Defendants' Petition for a Writ of Certiorari to the Supreme Court.

II. Legal Standard

In making determinations on motions to stay, courts "exercise [ ] judgment" and "weigh competing interests." *U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, L.L.C.,* 288 F. Supp. 3d 28. 31 (D.D.C. 2017) (Kollar-Kotelly, J.) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1988)). Courts look at four factors to determine whether to issue a stay:

(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal;

(2) the likelihood that the moving party will be irreparably harmed absent a stay;

(3) the prospect that others will be harmed if the court grants the stay; and

(4) the public interest in granting the stay.

*Cuomo v. United States NRC*, 772 F. 2d 972, 974 (D.C. Cir. 1985). The Court will consider each factor in turn.

III. Legal Analysis

A. Likelihood of Success on the Merits/Presentation of a Serious Legal Question

Plaintiffs argue that Defendants are unlikely to prevail on either the expropriations or comity argument. Plaintiffs focus on the fact that the Court of Appeals denied a stay of the mandate, and the Supreme Court also denied a stay; however, the Court of Appeals remanded the case to this Court, and the Supreme Court's denial was without prejudice to filing a new application

to stay proceedings after Defendant sought a stay in this Court. Accordingly, the effect of these denials was to leave resting with this Court the decision whether or not to grant a stay. Plaintiffs assert further that the likelihood of success is slim because the Supreme Court grants certiorari in only one to four percent of cases, Pls.' Opp'n, ECFN o. 44, at 9; however, this statistical percentage is misleading as it fails to distinguish between meritorious petitions (involving serious legal issues) and frivolous petitions, and it doesn't focus on the particular issues in this case.

In considering the likelihood of success factor, this Court notes that the Circuit's decision in *Phillip*, 894 F. 3d 406, was comprehensive, well-reasoned, and fully supported by relevant statutory and case law. The opinion addressed in detail the arguments raised by both sides, and Defendants' request for *en banc* consideration was denied. As such, on that basis, the "likelihood of success" factor would weigh in favor of Plaintiffs. Although it is this Court's view that its decision affirmed by the appellate court should be upheld, a "likelihood of success" analysis in this context requires that this Court assume the posture of engaging in speculation as to what the Supreme Court is likely to do.

Defendants contend that this Court "need not take the additional step of predicting whether, if the Supreme Court grants certiorari, it will reverse or affirm." Defs.' Reply, ECF No. 45, at 8. Defendants assert that instead of considering the "likelihood of success," the question here is "whether Defendants have raised a serious legal question [as to ]whether certiorari will be granted" based on its allegations that the petition is:

> brought by a foreign sovereign, challenging a panel decision addressing the scope of an FSIA exception and the comity doctrine of abstention; where the panel decision created a circuit split; where the panel decision rejected the express views of the Executive Branch on both issues; and where the circuit's denial of rehearing en banc provoked a lengthy dissent noting the far-ranging implications of the panel decision.

Defs.' Reply, ECF No. 45, at 7. *See Loving v. I.R.S.*, 920 F. Supp. 2d 108, 110 (D.D.C. 2013)

5

(finding that "so long as the other factors strongly favor a stay, such remedy is appropriate if 'serious legal question is presented'") (citing *CREW v. Office of Admin.*, 593 F. Supp. 156, 160 (D.D.C. 2009) (Kollar-Kotelly, J.)).

In *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977), this Circuit found that the "serious legal question" standard may replace the "likelihood of success on the merits" standard. The Circuit Court opined that:

> We believe this approach is entirely consistent with the purpose of granting interim injunctive relief, whether by preliminary injunction or by stay pending appeal. Generally, such relief is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit. An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success.

*Id.* The Court finds that, based on the procedural posture of this case and to avoid this Court having to speculate about the ultimate outcome, the first factor to be considered is not likelihood of success on the merits, but rather whether or not this case presents serious legal questions.

Defendants claim that its petition for a writ of certiorari "implicates vital questions about the FSIA's expropriation exception to foreign-sovereign immunity and about the role of international comity when a foreign sovereign is sued in a U.S. court on a matter of considerable significance to the sovereign." Def.'s Mot., ECF No. 43, at 11; *see Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983) ("[A]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States and the primacy of federal concern is evident."). Plaintiffs counter that the "SPK is [un]likely to avoid a U.S. court, which would require overturning established and well-reasoned D.C. Circuit precedent." This Court notes however that the D.C. Circuit precedent referenced by Plaintiffs — *Simon v. Republic of*

6

*Hungary*, 812 F. 3d 127 (D.C. Cir. 2016) — is another case where the Defendants have filed a petition for writ of certiorari and a stay is being considered (based on the petitions for certiorari filed in that case and the instant case).[4]

In further support of its claim that this case presents a serious legal question on the expropriation exception and international comity, Defendants rely on the dissenting opinion of Judge Gregory G. Katsas, but Plaintiffs contend summarily that such reliance is misplaced because "[o]ne dissenting view, within an entire Circuit, should not make the SPK optimistic." Pls.' Opp'n, ECF No. 44, at 11. Defendants reference also the amicus brief filed by the United States and point out that the D.C. Circuit's decision conflicts with the views of the Executive Branch of the present Administration, whereby the expropriation exception "applies only to takings in violation of the international law of state responsibility and expropriation," as opposed to "the full range of international human rights law." Defs.' Mot, ECF No. 43, at 14 (internal citation omitted).

With regard to comity, Defendants contend that "[t]he D.C. Circuit held here that the FSIA silently eliminated th[e] longstanding rule of abstention" whereby courts have had the power to "dismiss cases against foreign sovereigns based on international comity." Def.'s Mot, ECF No. 43, at 15. The D.C. Circuit recognized that its decision created a circuit split with the Seventh Circuit over the availability of international comity defenses in suits brought against foreign sovereigns, *see Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 857-58 (7th Cir. 2015), and further, that it disregarded the position of the United States Government on the issue of comity. *See, e.g., Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) (courts have recognized

---

[4] The petition for a writ of certiorari was filed in *Simon* on May 16, 2019. The Court was recently informed that, on January 21, 2020, the Supreme Court issued an order inviting the Solicitor General of the United States to file a brief in both *Simon*, Case No. 18-1447, and *Philipp*, Case No. 19-351.

7

that foreign sovereigns have a "unique interest in resolving the ownership of" property taken from their citizens and a "comity interest in using its courts for a dispute if it has a right to do so.") Accordingly, Defendants submit that this case raises serious questions about both the expropriation exception and the comity doctrine. Plaintiffs' Opposition does not rebut Defendants' contention that this case involves "serious legal questions," but rather, Plaintiffs focus on their "likelihood of success."

This Court agrees that the issues presented in connection with this case raise serious and important legal questions regarding application of the expropriation exception and the comity doctrine, where these questions have yet to be resolved by the Supreme Court, and they can affect relations between the United States and foreign nations. Accordingly, in looking at whether this case raises serious legal issues as opposed to focusing on the likelihood of success on the merits, this Court finds that Defendants' argument that this case presents serious and difficult legal questions weighs in favor of Defendants' request for a stay.

B. <u>Likelihood of Irreparable Harm to the Movant</u>

"A party moving for a stay is required to demonstrate that the injury claimed is 'both certain and great.'" *Cuomo*, 772 F.2d at 976 (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Defendants contend that that the FSIA confers immunity from the burdens of litigation as well as immunity from liability, *In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998), and accordingly, they will suffer irreparable harm in the event that they litigate this case before a court that may not have jurisdiction. Defendants seek Supreme Court review of threshold questions as to whether they are immune under the FSIA and whether comity permits dismissal, and in the event that the Supreme Court rules in favor of Defendants, these proceedings will be unnecessary. "A stay will avoid burdening the Defendants with potentially unnecessary discovery and impairing

8

Defendants' immunity." Def.'s Mot, ECF No. 43, at 18; *see In re Papandreou*, 139 F. 3d at 253. Plaintiffs distinguish the *Papandreou* case on grounds that it involved discovery prior to when any court had ruled on the FSIA defense. Pls.' Opp'n, ECF No. 44, at 19.

Plaintiffs assert that the only "irreparable harm" identified by the Defendants is "the potential waste of resources," and they conclude (without reference to any caselaw) that if this were irreparable harm, every petition for certiorari would compel a stay. *Id.* at 18. Defendants argue that Plaintiffs' categorical assertion that a foreign sovereign is not irreparably harmed when forced to defend itself after filing a certiorari petition seeking a reversal of denial of sovereign immunity is unsupported. "To the contrary, courts regularly give foreign sovereigns the ability to obtain a final binding decision on jurisdictional issues before assuming further burdens of litigation in a U.S. court." Defs.' Reply, ECF No. 45, at 10-11 (*see* string cite included in footnote 2.)

This Court finds that, absent a stay, Defendants will be forced to incur the time and expenses of litigation, which may be avoided in the event that certiorari is granted and Defendants' challenge is upheld. This burden of defending against a lawsuit is irreversible and constitutes harm. Accordingly, this factor involving likelihood of irreparable harm to the movant weighs in favor of Defendants' request for a stay.

C. <u>Injury to Others, including the Party Opposing the Stay</u>

Defendants assert that Plaintiffs will not be injured in the limited time it will take for resolution of their petition for a writ of certiorari. As a preliminary matter, Defendants note that the Plaintiffs are successors-in-interest to the members of the Consortium as opposed to Holocaust survivors, and litigation here will be "based on documentary evidence and expert opinion," as opposed to testimony by living witnesses with knowledge of the events in question. Defs.' Mot., ECF No. 43, at 19. *Cf. Simon v. Republic of Hungary*, Case No. 17-7146 (Order dated Mar. 15,

2019) (denying motion to stay mandate where the plaintiffs were living Holocaust survivors and witnesses to the takings). Defendants conclude accordingly that a stay of several months will not cause any prejudice to Plaintiffs' pursuit of their claims.[5]

Plaintiffs focus on the fact that this case has been pending in court since 2015, and they opine that, even prior to litigation, "Defendants disingenuously strung Plaintiffs along with promises of a fair and just hearing" before an Advisory Commission. Pls.' Opp'n, ECF No. 44, at 19-20. Plaintiffs' claim of prejudice relies heavily on delay that predates and is unrelated to the filing of the petition for certiorari and as such, it does not demonstrate harm attributable to a stay while the Supreme Court decides on Defendants' pending request for a writ of certiorari. Accordingly, Plaintiffs have presented this Court with no evidence that their position in this litigation will be weakened or negatively affected by briefly staying this matter. Because the Court finds this factor of "injury to others" to be unsupported by Plaintiffs' argument, this factor weighs in favor of Defendants' request for a stay.

D. Public Interest

Defendants argue that there is a strong public interest in "ensuring that foreign sovereigns are not inappropriately subject to suit in the United States." Def.'s Mot, ECF No. 43, at 16; *see Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1319 (2017) (explaining that the United States benefits from recognizing the foreign sovereign immunity of other countries, who in turn respect United States' sovereign immunity). Defendants argue that "[a] stay best supports the public's interest in preserving the "important U.S. public policy value[ ]" of [recognizing respect for] sovereign immunity." Def.'s Mot., ECF No. 43, at 17

---

[5] Defendants note that the Plaintiffs 'waited for more than seventy years after World War II to file this suit, even though the Welfenschatz has been on public display nearly all that time." Defs.' Reply, ECF No. 45, at 11.

(citing *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas)*, 314 F. Supp. 3d 95, 109 (D.D.C. 2018)).

In contrast, Plaintiffs assert that the public interest "requires prompt resolution of claims involving crimes of the Holocaust [b]ecause Holocaust restitution is so plainly in the public interest[.]" Pls.' Opp'n, EF No. 44, at 16. "While justice is the paramount concern, the public interest also demands that the Holocaust is remembered and that its crimes are brought to light." *Id.* To illustrate the public interest in resolution of the instant case, Plaintiffs engage subsequently in a discussion regarding the HEAR Act [Holocaust Expropriated Art Recovery Act of 2016, Publ. L. No. 114-308], which exclusively addresses Holocaust victims and covers the years of 1933-1945; the Holocaust Museum; and the 75th Anniversary of World War II Commemoration Act, Pub. L No. 115-433. Plaintiffs note that the HEAR Act was enacted "[t]o provide the victims of Holocaust-era persecution and their heirs a fair opportunity to recover works of art confiscated or misappropriated by the Nazis," Pls' Opp'n, ECF No. 44 at 16, and this is directly on point with the relief sought through this litigation.

As a preliminary matter, Defendants note that the HEAR Act does not address cases against foreign sovereigns, but rather the legislative history discusses cases against domestic private parties (such as U.S. museums). Defs.' Reply, ECF No. 45, at 8 Defendants acknowledge and agree however that the HEAR Act reflects "a public policy giving Holocaust era victims and their heirs a fair opportunity to recover works of art confiscated or misappropriated by the Nazis." *Id.* (internal quotation marks and citation omitted). The Court finds that Plaintiffs indicate a public policy in support of prompt resolution of claims stemming from Holocaust-era crimes, including confiscation of art, at the same time that the Defendants highlight the importance of issues of sovereign immunity and comity affecting international relations. Accordingly, in light of the fact

11

that the public interests propounded by both parties are well-grounded, the Court finds that this factor of public interest stands in equipoise.

IV. Conclusion

Because Defendants have demonstrated that this case involves serious legal questions and furthermore, that there will be little, if any, harm to the Plaintiffs or the public, but irreparable injury to the Defendants if the stay is denied, *see Holiday Tours, supra.*, this Court finds that a stay pending resolution of Defendants' Petition for a Writ of Certiorari should be GRANTED. A separate Order accompanies this Memorandum Opinion.

Dated: January 29, 2020  _____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE