UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALAN PHILIPP, *et al.*,<br><br>         Plaintiffs,<br>     v.<br><br>STIFTUNG PREUSSISCHER<br>KULTURBESITZ,<br><br>         Defendant. | Civil Action No. 15-00266 (CKK) |

**MEMORANDUM OPINION**
**(July 26, 2021)**

Plaintiffs Alan Philipp ("Philipp"), Gerald G. Stiebel ("Stiebel"), and Jed R. Leiber ("Leiber") (collectively the "Plaintiffs'), are the legal successors of the estates of members of a Consortium comprised of three art dealer firms based in Frankfurt, Germany – J.&S. Goldschmidt, I. Rosenbaum, and Z.M. Hackenbroch. Plaintiffs Philipp and Stiebel indicate that their ancestors, Zacharias Max Hackenbroch and Isaac Rosenbaum, respectively, were the owners or co-owners of two [of the three] art dealer firms. First Am. Compl., ECF No. 14, ¶¶ 1, 17-18. Plaintiff Leiber [who was added in the First Amended Complaint] is the heir of Saemy Rosenberg, who co-owned the I. Rosenbaum art dealer firm. First Am. Compl., ECF No. 14, ¶ 19. The First Amended Complaint explains further that Philipp, Stiebel, and Leiber are "assignees of the claims of Julius Falk Goldschmit . . . and authorized agents for the heirs of Arthur Goldschmidt, who together were the sole owners of the J.&S. Goldschmidt[,]" the third art dealer firm. *Id.* at ¶ 20.

Plaintiffs allege that Defendant Stiftung Preussischer Kulturbesitz ("SPK") is in wrongful possession of a collection of medieval relics known as the Welfenschatz, which was

1

sold by the Consortium – under coercion, as part of the Nazi persecution of the Jewish sellers – on June 14, 1935 to the State of Prussia through the Dresdner Bank. Plaintiffs Philipp and Stiebel initially filed their lawsuit against the Federal Republic of Germany ("Germany") and SPK, although Germany has since been dismissed from the case. This case is currently before this Court on Plaintiffs' [56] Motion for Leave to File a Second Amended Complaint, which is opposed by Defendant SPK.[1] For the reasons set forth herein, Plaintiffs' [56] Motion for Leave to Amend is DENIED. A separate Order accompanies this Memorandum Opinion.

## I. Legal and Procedural Background

This Court incorporates by reference the background set forth in its [26] Memorandum Opinion, which granted in part and denied in part Defendants' [18] Motion to Dismiss the Plaintiffs' First Amended Complaint. *See Philipp v. Fed. Republic of Germany*, 248 F. Supp. 3d 59, 70-72 (D.D.C. 2017) (concluding that Plaintiffs' claims fell within the exception to the domestic takings rule adopted in *Simon* v. *Republic of Hungary*, 812 F.3d 127 (D.C. Cir. 2016)).[2] Defendants filed a [27] Notice of Appeal to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), and the case was stayed in this Court while

---

[1] In connection with this Memorandum Opinion and the accompanying Order, the Court considered: (1) Plaintiffs' [56] Motion for Leave to File Second Amended Complaint ("Pls.' Mot. to Amend") and the exhibits attached thereto; Plaintiffs' [56-1] Memorandum in support thereof (Pls.' Mem."); Defendant's [57] Opposition to Plaintiffs' Motion for Leave to Amend the Complaint ("Def.'s Opp'n") and the exhibits attached thereto; Plaintiffs' [58] Reply to Defendant's Opposition to Motion for Leave to Amend ("Pls.' Reply") and the exhibits attached thereto; Plaintiffs" [14] First Amended Complaint ("First Am. Compl."); Plaintiffs' proposed Second Amended Complaint; and the entire record in this case. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

[2] Defendants filed a [12] prior Motion to Dismiss the [original] Complaint, but that motion was denied without prejudice when Defendants consented to the filing of Plaintiffs' First Amended Complaint. *See* January 14, 2016 Minute Order.

the interlocutory appeal was pending.  The D.C. Circuit's opinion in *Philipp v. Federal Republic of Germany*, 894 F.3d 406 (D.C. Cir. 2018), noted that the appeal raised a novel question insofar as the court was asked to decide "for the first time whether seizures of art may constitute 'takings of property that are themselves genocide.'" *Philipp*, 894 F.3d at 411 (quoting *Simon*, 812 F. 3d at 144).  The D.C. Circuit concluded that they could be and affirmed the application of the expropriation exception to sovereign immunity as well as this Court's exercise of subject matter jurisdiction.  The Circuit Court did however vacate this Court's denial of immunity to Germany and directed that Germany be dismissed.

Shortly thereafter, Defendants filed their [43] Motion to Stay Pending Petition for Writ of Certiorari to the United States Supreme Court, which was granted by this Court's [47] Order.  The Supreme Court granted certiorari and issued its decision in *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703, 715 (2021), holding that "the phrase "rights in property taken in violation of international law," as used in the FSIA's expropriation exception, refers to violations of the international law of expropriation and thereby incorporates the domestic takings rule."  As the Supreme Court explained, the international law of takings governs "confiscation of the property of foreigners, but measures taken by a state with respect to the property of its own nationals are not subject to these principles."  *Id.* at 710 (internal quotation marks omitted).  Furthermore, contrary to the D.C. Circuit's decisions in *Simon* and *Philipp*, the FSIA's expropriation exception invoked only the narrow doctrine of "international law governing property rights," rather than broadly incorporating international human-rights norms like the law of genocide.  *Id.* at 711-712.  The D.C. Circuit's judgment was vacated, and the case was remanded for further proceedings.  The Supreme Court explicitly declined to consider the heirs' alternative argument "that the sale of the Welfenschatz is not subject to the domestic takings rule because the consortium members were not German nationals at the time of the

3

transaction" and stated that the Court of Appeals should direct the District Court to "consider this argument, including whether it was adequately preserved below." *Id.* at 716

On March 16, 2021, the D.C. Circuit issued its [53] Mandate and attached Judgment indicating that - consistent with the Supreme Court mandate - this case was remanded to this Court, with instructions to "consider whether the sale of the Welfenschatz is not subject to the domestic takings rule because the consortium members were not German nationals at the time of the transaction, including whether this argument was adequately preserved in the District Court." *See* Mandate and attached Judgment.

A few days thereafter, the parties filed their [54] Second Joint Status Report, indicating a proposed briefing schedule for Plaintiffs to move for leave to amend their Complaint. Defendant anticipates "renewing its motion to dismiss the then-operative complaint, as determined by the Court's ruling on the motion for leave to amend." Second Joint Status Report, ECF No. 54, at 2. Plaintiffs' Motion for Leave to Amend is now ripe for consideration by this Court.

## II. Legal Standard for a Motion to Amend

In cases where plaintiffs have already amended their Complaint, Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996), *cert den.*, 520 U.S. 1197 (1997) (finding that leave to amend a complaint is within the court's discretion and should be freely given unless there is good reason to the contrary); *Firestone v Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (noting that it is an "abuse of discretion" to deny leave to amend without sufficient reason).

"When evaluating whether to grant leave to amend, the Court must consider (1) undue

4

Case 1:15-cv-00266-CKK   Document 60   Filed 07/26/21   Page 5 of 18

delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint." *Howell v. Gray*, 843 F. Supp. 2d 49, 54 (D.D.C. 2012) (citing *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996)). "Within these bounds, a district court has discretion to grant or deny leave to amend under Rule 15(a)." *Atchinson*, 73 F.3d at 426; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of any opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion.")  The party opposing the amendment bears the burden of coming forward with a colorable basis for denying leave to amend. *Abdullah v. Washington*, 530 F. Supp. 2d 112, 115 (D.D.C. 2008).

### III. Analysis of Arguments

In this case, Plaintiffs allege that the impetus for their proposed addition of "allegations about Nazi German's policies with regard to nationality, and specific allegations about the nationality of the specific victims in this case" is based on the "recent change in the governing law." Pl.'s Mem., ECF No. 56-1, at 8.³  Plaintiffs propose adding a new section captioned "The Nazis and the Question of German Nationality[,]" which "expands upon facts that the Plaintiffs had no necessity to allege under the prior standard of law (although they did)[.]" *Id*. at 9. Defendant alleges that the proposed amendments fall into the following categories: (1) amendments to make the complaint conform to the removal of Germany as a defendant and striking claims that have been dismissed: (2) revisions reflecting the "passage of time since the First Amended Complaint was filed more than five years ago;" (3) "pages of new allegations about Nazi ideology, particularly focusing on statements by Nazi officials about whether they

---

³ Page numbers referenced herein are to the page numbers assigned by the Electronic Case Filing ("ECF") system.

5

believed Jews could be true German citizens;" (4) a "recharacteriz[ation] [of] the facts about the Consortium's legal status" with a focus on the individual owners; and (5) new facts about two of the art dealers, alleging the Rosenbaum and Rosenberg were "Dutch nationals, or functionally stateless." Def.'s Opp'n, ECF No. 57, at 18-19. Defendant does not object to an amendment with regard to categories (1) and (2) above, although Defendant contends it is unnecessary. *Id.*

Plaintiffs contend however that the proposed amendment "does not change the core substance of the case," but instead, it "provides additional facts relevant to a determination of whether Plaintiffs' relatives were German at the time of the forced sale[.]" *Id.* at 10. Plaintiffs assert further that there is "no delay in pleading allegations under a standard that did not previously exist[,]" as the law "changed in February 2021;" the mandate was issued in March, and the instant Motion was filed in April." *Id.* at 11. Nor is there "prejudice" as discovery has not yet commenced, and there is "certainly no bad faith." *Id.*

Absent from Plaintiffs' Motion is any discussion of the Supreme Court's mandate (reflected in the Circuit Court's Judgment), which instructs this Court to consider "whether the sale of the Welfenschatz is not subject to the domestic takings rule because the consortium members were not German nationals at the time of the transaction" and also "whether this argument was adequately preserved in the District Court." *See* Mandate, ECF No. 54 and attached Judgment (referencing the Supreme Court opinion). On its face, allowing Plaintiffs to amend their First Amended Complaint now - subsequent to a mandate directing that this Court consider whether the argument was adequately preserved before this Court - appears to violate the letter and spirit of the mandate with regard to that issue of preservation.

Defendant asserts that "[w]hen the Supreme Court remands to a lower court to decide

6

whether a party preserved an alternative theory (and to decide the merits of that theory if they did), the lower court lacks the authority to let that party introduce an unpreserved theory." Def.'s Opp'n, ECF No. 57, at 8. "If [Plaintiffs'] prior briefs and complaints did not adequately raise the alternative theory of jurisdiction, then it is too late to do so with another amended complaint. And if their prior briefs and complaints *did* adequately raise that theory, then there is no need for an amendment." Def.'s Opp'n, ECF No. 57, at 8. Defendant argues further that "Rule 15 leads to the same place" as Plaintiffs' "new proposed allegations were known to them for years and could have been alleged when they filed their first two complaints over five years ago." Def.'s Opp'n., ECF No. 57, at 8. Accordingly, this Court will consider the Plaintiff's request for leave to amend in the context of both the Supreme Court's mandate and also pursuant to the Rule 15(a) standard.

### A. The Mandate Prevents the Amendment of the First Amended Complaint

"When a case is remanded . . . from the Supreme Court with specific instructions, th[e lower] court must confine its review to the limitations established by the Supreme Court's remand order." *United States v. Loredo-Torres*, 164 Fed. App'x 523, 524 (5th Cir. 2006), *cert den.*, 547 U.S. 1173 (2006). This "mandate rule" is an "even more powerful version of" the law-of-the-case doctrine that applies when a case is remanded to a district court from a higher court. *Duberry v. District of Columbia*, 316 F. Supp. 3d 43, 51 (D.D.C. 2018) (quoting *LaShawn A. v. Barry*, 78 F.3d 1389, 1393 n.3 (D.C. Cir. 1996)). Pursuant to the mandate rule, lower courts must "honor the decision of a superior court in the same judicial system," *id.*, and refrain from "revisit[ing] issues 'decided either explicitly or by necessity implication' by the higher court." *Duberry*, 316 F. Supp. 3d at 51 (citing *United States ex rel. Dep't of Labor v. Ins. Co. N. Am.*, 131 F.3d 1037, 1041 (D.C. Cir. 1997)). Accordingly, district courts may not "do

anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of the court deciding the case." *United States v. Slatten*, Crim. No. 08-360 (RCL), 2014 WL 610970, at *1 (D.D.C. Feb. 18, 2014) (alterations and internal quotation marks omitted) (quoting *Yabloonski v. United Mine Workers of Am.*, 454 F. 2d 1036, 1038 (D.C. Cir. 1971)).

Defendant relies upon several cases to illustrate how this mandate rule bars Plaintiffs from amending their First Amended Complaint, under this scenario where this Court was instructed to see whether an argument [that the members of the Consortium were not German nationals] was adequately preserved. *See e.g., F. Hoffmann-LaRoche, Ltd. v. Empagran S.A.*, 542 U.S. 155, 175 (2004) (vacating a decision by the D.C. Circuit and remanding with instructions for the Circuit to "consider" an alternative suggested by plaintiffs, in the event that the respondents had "properly preserved the argument"). On remand in that case, the D.C. Circuit directed the parties to brief the two questions and ultimately held that plaintiffs had preserved the alternative theory because they raised it in their existing complaint, *Empagran, S.A. v. F. Hoffman-LaRoche, Ltd.*, 388 F.3d 337, 340-43 (D.C. Cir. 2004), and they had also "advance[d] it in briefs or oral arguments at every stage [district court, D.C. Circuit, and Supreme Court] in this litigation. *Id.* at 343-44.[4]  *Compare West v. Gibson*, 527 U.S. 212, 217-23 (1999) (where plaintiff argued before the Supreme Court that the Seventh Circuit's decision could be affirmed under an alternative theory of exhaustion of claims, and rather than

---

[4] Defendant notes that the D.C. Circuit concluded that defendants had waived the argument that plaintiffs' theory was waived, because they had "never suggested to the District Court or to this court that the alternative claim was waived." Def's Opp'n, ECF No. 57, at 22 n.6; *see Empagram*, 388 F.3d at 344. In contrast, Defendant alleges that it "has pointed out at every stage of proceedings that Plaintiffs did not dispute that the Consortium, the art-dealer firms, or the individual owners of the dealerships were German nationals in 1935. Def.'s Opp'n, ECF No. 57, at 22 n.6 (referencing MTD Reply at 5; Appellants' Reply Brief at 11 n.8).

considering that argument, the Supreme Court directed the Seventh Circuit to "determine whether these [theories] have been properly raised and, if so, decide them.")  On remand in *West*, the Seventh Circuit reviewed plaintiff's prior briefs and determined that plaintiff had not argued that he had exhausted his claims, but rather, he had argued that exhaustion was unnecessary and thus, plaintiff had not preserved the alternative theory.  *Gibson v. West*, 201 F.3d 990, 992 (7th Cir.2000) ("Thus, far from arguing that he had satisfied the requirement of exhaustion with respect to compensatory damages, Gibson argued that he *did not have to do so*.")

In *In re Johns-Manville Corp.*, 600 F.3d 135, 147 (2d Cir. 2010), where the Second Circuit was instructed to "address only properly preserved arguments on remand," that court found that plaintiffs had "forfeited" an alternative theory by not adequately raising it at any time before the case reached the Supreme Court.  The Second Circuit recognized that waiver principles are ordinarily "prudential rather than jurisdictional," and accordingly, courts would have the discretion to consider alternative arguments that were not strictly preserved.  *Id.*  This principle was however outweighed by the remand order whereby the Supreme Court "itself decided, in its discretion, that forfeited arguments should not be considered," which barred plaintiffs from raising their unpreserved alternative theory on remand.  *Id.*

Defendant notes that in these cases they cited, "courts following the Supreme Court's instruction to determine whether a party preserved an alternative theory raised in the Supreme Court have done so based on the *operative complaint* and the arguments found in the parties' briefs in earlier stages of the case."  Def's Opp'n, ECF No. 57, at 24 (emphasis in original).  Defendant asserts that if the alternative theory was not raised in those pleadings, "the Supreme Court's mandate barred lower courts from considering it, even if normal rules of litigation might

9

allow the party to present its belatedly raised theory." *Id*; *see generally Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414-15 (4th Cir. 2005) (affirming district court's dismissal of complaint and denial of leave to amend and noting that had district court permitted plaintiff to amend the complaint, it would have violated the court's remand order, which required dismissal); *see also Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270-71 (2d Cir. 2012) (per curiam) (holding that the district court erred on remand by considering an alternative theory that was not previously raised). In *Parmalat*, that appellees argued that the mandate could have "reasonably" been read as allowing consideration of an alternative basis for denying mandatory abstention. *Id.* at 270. The Second Circuit noted that in determining whether an issue may be open for reconsideration on remand, the trial court "should look to both the specific dictates of the remand order as well as the broader sprit of the mandate." *Id.* (internal quotation marks omitted). In that case, the Second Circuit concluded that it was "not reasonable [for the district court] to construe the mandate as allowing alternative, dispositive bases for denying abstention[.]" *Id.* at 271.

In their Reply, Plaintiffs cite several cases to support the proposition that, [w]hen an open question remains on remand, the mandate rule does not preclude amendment of a complaint." Pls.' Reply, ECF No. 58, at 9; *see Silverman v. Teamster Local 219 Affiliated Health and Ins. Fund*, 725 F. App'x 79, 81 (2d Cir. 2018) (noting that a mandate is "controlling only as to matters within its compass" and when issues are left open, a lower court may dispose of a case on grounds that were "not dealt with" by a remanding court). In *Silverman*, the mandate directed the district court to conduct "further proceedings in accordance with the opinion of [the Circuit] Court." *Id.* (citation omitted). Because nothing restricted the district court there from considering LMRA preemption, the court did not violate the mandate when it

10

permitted amendment of the complaint.  *Id.*  *Silverman* differs factually however from the instant case, as the mandate here makes clear that the only issue possibly remaining in this case is whether the takings rule applies or not, including a necessary inquiry into whether Plaintiffs preserved this argument at all.  Plaintiffs assert that because their proposed amendments "address nationality," they are "by definition within the mandate."  *Id.*  Plaintiffs' assertion glosses over the specific language of the mandate requiring an inquiry into whether there was preservation of the argument before this Court.  Furthermore, Plaintiffs will be permitted to address nationality (and preservation of this issue) in the context of any opposition to Defendant's proposed motion to dismiss.

Plaintiffs also cite  *Owner-Operator Indep. Drivers Ass'n v. U.S. DOT*, 316 F. Supp. 3d 201, 206 (D.D.C. 2018), a case that is factually inapposite.  In *Owner-Operator Indep. Drivers*, the district court dismissed the case against the five plaintiff commercial truck drivers and their industry association, and the D.C. Circuit reversed in part, concluding that two of the five drivers had standing to seek damages.  The district court noted that the D.C. Circuit remanded only two plaintiffs' damages claims and thus, the court could neither consider claims by the association nor could the remaining individual plaintiffs seek damages.  *Id.*  The court found however that "[t]he Circuit did not limit [the two plaintiffs'] standing to seek damages to FCRA, or otherwise preclude them from seeking damages under the Privacy Act."  *Id.*  The court denied without prejudice the two plaintiffs' motion for leave to file an amended complaint and directed the plaintiffs to file an renewed motion to amend, consistent with the mandate.  *Id.* [5]

---

[5] Plaintiffs cited a third case, *Simpson v. Socialist People's Libyan Arab Jamahiriya*, 326 F.3d 230, 235 (D.C. Cir. 2003) (where the D.C. Circuit permitted a plaintiff to amend her complaint on remand and she then added her husband's estate as a co-plaintiff).  While the defendant argued that this violated the mandate rule, the court determined that the issue of whether the plaintiff could add her deceased husband's claims was not before the Court of Appeals and thus, the addition of

In the instant case, the Supreme Court recognized that Plaintiffs may not have preserved their alternative argument and upon remand to the Court of Appeals, this Court was directed to consider this issue. Permitting Plaintiffs to amend their First Amended Complaint now to include additional facts and theories is inconsistent with the instruction that this Court determine whether any alternative argument by Plaintiffs had been preserved. Both the "dictates of the remand order" and the "spirit of the mandate" require that this Court look at the record in this case (which existed at the time the mandate was issued), including Plaintiffs' operative First Amended Complaint, in order to carry out its determination as to whether Plaintiffs' argument was adequately preserved. Accordingly, this Court finds that the Supreme Court mandate does not permit amendment of Plaintiffs' First Amended Complaint. The Court turns now to the standard under Rule 15(a).

## B. Rule 15(a) Does Not Permit the Amendment of the First Amended Complaint

Leave to amend should be "freely given" unless there is a good reason to deny it, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue or allowance of the amendment, . . . " *Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiffs argue that the Court should grant leave for an amendment of their First Amended Complaint because of a recent change in law and the absence of delay, prejudice or bad faith. These points are discussed below.

---

the estate could not violate the mandate rule. *Id.* Plaintiffs in the instant case contend that because the Supreme Court "never considered the question of whether Plaintiffs could amend their Complaint[,]" [as this issue was not before that Court] the amendment "in no manner violates the mandate rule." Pls.' Reply, ECF No. 58, at 10. Again, the Court notes that Plaintiffs' contention ignores the specific language of the mandate regarding whether there was a preservation of this sole possible legal theory.

### 1. There is No Change in Law and therefore, Plaintiffs' Delay in Requesting an Amendment is Undue Delay

Plaintiffs argue that they "had no reason to allege particular facts concerning the nationality of Goering's victims – although they did – because circuit law at the time . . . focused on the Nazis' takings of art without regard to the so-called "domestic takings" rule." Pls.' Mem., ECF No. 56-1, at 12 (citing cases).  Plaintiffs here elected to rely on a different theory, which was accepted by the D.C. Circuit when it decided this case on the novel issue that "seizures of art may constitute 'takings of property that are themselves genocide.'"  *Philipp,* 894 F.3d at 411 (quoting *Simon*, 812 F.3d at 144).  Plaintiffs assert that, after the Supreme Court's decision in this case, they should now be entitled to amend their First Amended Complaint to address "recent changes in governing law."  Pls.' Mem., ECF No. 56-1, at 11, citing *Minnick v. Cal. Dep't of Corr.*, 452 U.S. 105, 126 (1981) (observing that petitioners "have the right . . . to amend their pleadings in light of the developments of the law that have occurred since the original complaint was filed."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 482 (1990) (when a case is mooted by a "change in the legal framework governing the case," it is appropriate to "remand for further proceedings in which the parties may, if necessary, amend their pleadings or develop the record more fully.")  Furthermore, Plaintiffs' argument that there was no delay associated with their requested amendment is contingent on their allegation that there has been a change in law.

This Court rejects Plaintiffs' argument that there was a change in law that excuses delay, as the applicability of the domestic takings rule pre-dates the Supreme Court's decision, and the Supreme Court's unanimous rejection of Plaintiffs' arguments in this case does not constitute new law.  *Compare Petworth Holdings, LLC v. Bowser*, 333 F.R.D. 297, 299 (D.D.C. 2019) (where leave to amend was granted under Rule 15(a) because Defendants failed to demonstrate

13

delay, prejudice or futility).   In that case, two years after the plaintiff filed its complaint, the Supreme Court issued a decision in another case overruling a decades-old Supreme Court case and eliminating "any exhaustion requirement for § 1983 takings claims[.]" *Id.* at 299 (internal citations omitted).   The Honorable James E. Boasberg noted that, '[i]ndeed, Defendants themselves concede that – at the very least – "it is not clear" that Plaintiffs could have previously brought a § 1983 claim seeking monetary damages." *Id.* at 300 (internal citation omitted).

Defendant notes that Plaintiffs were provided notice regarding Defendants' argument about domestic takings in Defendants' motion to dismiss the Complaint (which was denied without prejudice in light of Plaintiffs' amendment of their Complaint).   Furthermore, in Defendants' motion to dismiss the First Amended Complaint, Defendants asserted that – under Plaintiffs' own allegations  - the Consortium, its constituent firms, and the individual owners of the firms were German nationals.  Def.'s Opp'n, ECF No. 57, at 13 (citing Second Motion to Dismiss, ECF No. 18, at 28-31).  Moreover, Defendant argued that "*Simon* did not abrogate the domestic-takings rule in this different factual context, because *Simon* concerned the theft of personal property (like food, clothing, and housing) essential to survival — straightforward acts of genocide as that crime is defined in international law — not the negotiated sale of an art collection for millions of dollars." *See generally* Second Motion to Dismiss, ECF No.18, at 32-34.  Defendant notes that "Plaintiffs did not ask to amend their complaint again to add new allegations addressing Germany and SPK's domestic-takings argument." Def. Opp'n., ECF No. 57, at 13.[6]  Instead, Plaintiffs waited until after the Supreme Court rejected their argument (based on genocide) to request an amendment of their First Amended Complaint.

---

[6] Defendant notes further that when the case was pending in the D.C. Circuit, Defendants "highlighted that Plaintiffs had not raised this alternative argument." Def.'s Opp'n, ECF No. 57, at 31 (referencing Appellant's Reply at 11 n.8).

On certiorari, the Supreme Court repudiated the approach taken by the D.C. Circuit, relying instead on the domestic takings rule. As the Supreme Court explained, the international law of takings governs "confiscation of the property of foreigners, but measures taken by a state with respect to the property of its own nationals are not subject to these principles." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 710 (2021) (internal quotation marks omitted). Defendant submits that "[c]ontrary to Plaintiffs' suggestions in their motion to amend, nothing in the Supreme Court's decision changed existing law," Def.'s Opp'n, ECF No. 57, at 15, and in fact, the Supreme Court noted that the "domestic takings rule" rested on understandings with "deep roots not only in international law but also in United States foreign policy." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. at 710 (the domestic takings rule is a principle of law that has "endured" for decades). Accordingly, in this case, where the domestic takings law was apparent to all parties from the time the initial Complaint was filed, any delay by Plaintiffs in requesting amendment of their First Amended Complaint is undue delay. Accordingly, leave to amend pursuant to Ruel 15(a) shall be denied. "Leave to amend is properly denied when the plaintiff was aware of the information underlying the proposed amendment long before moving for leave to amend the complaint." *Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 420 (D.D.C. 2010)).

In this case, rather than entirely dismissing the case, the Supreme Court observed that Plaintiffs had "noted" an "alternative argument. . . that the sale of the Welfenschatz is not subject to the domestic takings rule because the consortium members were not German nationals at the time of the transaction." *Id.* at 715 (citing Respondents' Br. at 27-28). The Supreme Court also noted Defendants' position that Plaintiffs had not raised this issue below. *Id.* at 716 (citing Petitioners' Br. at 19 n.7). Accordingly, the Supreme Court directed that this argument be considered, "including whether it was adequately preserved below." *Id.*

Defendants have proffered persuasive authority for this Court to conclude that there is no "change in law" warranting an amendment and further that undue delay weighs against an amendment. This Court need not decide now whether Plaintiffs waived their alternative argument about the domestic takings rule. Instead, Plaintiffs' argument regarding their status as German nationals [based on allegations in their First Amended Complaint] may be considered in the context of an opposition to Defendant's proposed motion to dismiss.[7]

### 2. Considerations of Bad Faith by Plaintiffs and Prejudice to Defendant

Plaintiffs assert in one sentence in their Motion that "[t]here is certainly no bad faith." Pls.' Mem., ECF No. 56-1, at 11. Defendant argues however that Plaintiffs' failure to allege facts they knew at the time of prior complaints is unjustified and may show a "dilatory motive or bad faith[.]" Def.'s Opp'n, ECF No. 57, at 28 (citing *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008)). Plaintiffs claim that they had no reason to allege particular facts relevant to nationality because "circuit law at the time (as well as every other federal court to consider the question) focused on the Nazis' takings of art without regard to the so-called "domestic takings" rule." Pls.' Mem., ECF No. 56-1, at 12. Defendant points out that the original Complaint and First Amended Complaints were filed before the D.C. Circuit decided *Simon*, and even after *Simon*, the "parties continued to litigate . . . how *Simon* applied to the different facts of this case[,]" and in fact the D.C. Circuit noted that this case raised a novel question "whether *Simon's* rationale applied to alleged seizures of art." Def.'s Opp'n, ECF No. 57, at 30; *see Philipp*, 894 F.3d at 411. While Defendant speculates about Plaintiffs' strategy in deciding not to earlier amend their Complaint to include details they now propose adding,

---

[7] Nor does this Court address herein the futility or not of Plaintiffs' allegations about nationality, as those allegations will be addressed in the context of the Defendants' motion to dismiss.

16

Def.'s Opp'n, ECF No. 57, at 33-34, this Court makes no finding of bad faith as to Plaintiffs' motivation.

Plaintiffs assert that there is no prejudice because Defendant has not yet filed an answer and discovery has not begun. Pls.' Mem., ECF No. 56-1, at 11. In terms of the burden imposed, Defendant explains that Plaintiffs' proposed amendments are "substantial, changing their characterization of the Consortium, . . . , suggesting new facts and theories about the residency or nationality of some of the owners of some of the Consortium's constituent firms, . . ., and introducing new allegations about the details of German citizenship law, . . . " Def.'s Opp'n, ECF No. 57, at 38. While Defendant questions the merit and impact of these allegations, Defendant asserts that "responding to them now will require new expert opinions and substantial legal and factual investigations." *Id*. This, in turn, will further delay this six-year old case. The Court finds that Defendant has sufficiently established that there will be prejudice to the Defendant in permitting an amendment of the First Amended Complaint. Accordingly, Defendants have demonstrated both undue delay and prejudice, which warrants denying Plaintiffs' Motion for Leave to Amend under Rule 15(a).

**IV. Conclusion**

Plaintiffs' [56] Motion for Leave to Amend shall be denied based on this Court's interpretation of the remand order whereby this Court shall determine if Plaintiffs' argument about German nationality "was adequately preserved below," in light of the record that existed when the mandate was issued, which includes consideration of Plaintiff's operative First Amended Complaint. Plaintiffs' theory that its proposed amendment is based on a "change of law" is rejected by this Court. Accordingly, pursuant to Rule 15(a), leave to amend shall be

17

denied also based on undue delay and prejudice to the Defendant.[8]  A separate Order accompanies this Memorandum Opinion.

>   _____/s/_____
>   COLLEEN KOLLAR-KOTELLY
>   UNITED STATES DISTRICT JUDGE

---

[8] Defendant does not object to Plaintiffs' amendment of the First Amended Complaint to indicate that Germany is no longer a defendant, to strike claims that have been dismissed, and to reflect the passage of time since the First Amended Complaint was filed by adding a paragraph about the return to unrelated artwork to another claimant in 2020.  *See* Defendant's Opposition, ECF No. 57, at 18 -19.